IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Wendy Annette Moore, | ) | Criminal No. 2:13-330-RMG |
| | ) | Civil No. 2:17- 226-RMG |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the Court on Petitioner Wendy Moore's motion under 28 U.S.C. § 2255 to vacate her conviction or sentence, Petitioner's motion for discovery, appointment of counsel, and a hearing, and the Government's motion to dismiss Petitioner's motion. For the reasons set forth below, the Court denies Petitioner's motions and grants the Government's motion to dismiss.

## I. Background

After becoming involved romantically with co-Defendant Christopher Latham, formerly a prominent banker, Petitioner and Mr. Latham hired Samuel Yenawine (Petitioner's ex-husband) to kill Mr. Latham's wife, Nancy Latham. Mr. Yenawine recruited his former prison cellmate Aaron Wilkinson to assist with the murder. Mr. Wilkinson, however, exposed the murder plot to law enforcement on April 5, 2013, before the murder could take place.

On August 6, 2013, a superseding indictment charged Petitioner with Conspiracy to Use Interstate Commerce Facilities in the Commission of Murder for Hire, in violation of 18 U.S.C. § 1958(a) (Count One); Solicitation of Murder for Hire, in violation of 18 U.S.C. §§ 373 and 1958 (Count Two); Use of Interstate Commerce Facilities in the Commission of Murder for Hire, in violation of 18 U.S.C. §§ 1958 and 2 (Count Three); and Possession of a Firearm in Furtherance

of a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count 4). Petitioner was tried in February 2014 and found guilty on all counts. On August 11, 2014, Petitioner was sentenced to 180 months imprisonment. She filed a motion for a new trial and judgment of acquittal, which was denied on May 22, 2014. Her conviction and sentence were affirmed on January 20, 2016. *United States v. Moore*, 810 F.3d 932 (4th Cir. 2016).

On March 20, 2017, Petitioner timely filed the present motion to vacate. She asserts ten grounds for relief: (1) trial counsel was constitutionally ineffective in failing to move to sever her case from Mr. Latham; (2) trial counsel was constitutionally ineffective in failing to move for a change of venue; (3) trial counsel was constitutionally ineffective in failing to inform Petitioner of the opportunity to pursue a proffer agreement with the Government; (4) trial counsel was constitutionally ineffective in failing to introduce evidence proving Petitioner did not provide funds for the attempted assassination of Ms. Latham; (5) trial counsel was constitutionally ineffective in failing to object to statements linking Petitioner to Mr. Yenawine's prior murder case; (6) trial counsel was constitutionally ineffective in failing to object to prosecutorial remarks that Petitioner had a past criminal history; (7) trial counsel was constitutionally ineffective in advising Petitioner to remain silent at sentencing; (8) the sentencing guideline calculated for Petitioner overstated her culpability and the extent of her involvement in the offense; (9) appellate counsel was constitutionally ineffective in failing to challenge Petitioner's conviction under § 924(c) based on *Pinkerton* liability; (10) appellate counsel was constitutionally ineffective in failing to challenge Petitioner's conviction under § 924(c) on the basis that Mr. Wilkinson, who was in actual possession of the firearm, was not charged under § 924(c). The Government moved to dismiss on April 7, 2017. On May 31, 2017, Petitioner filed a response in opposition to the motion to dismiss.

## II.   Legal Standard

### A.   Section 2255

To obtain relief under 28 U.S.C. § 2255, a petitioner must prove by preponderance of the evidence that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). An individual bringing a motion under 28 U.S.C. § 2255 is entitled to an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Where the record "contains a dispute of material fact sufficient to preclude the grant of summary judgment to the Government," the petitioner is entitled to an evidentiary hearing. *United States v. White*, 366 F.3d 291, 301 (4th Cir. 2004). But "[n]o such hearing is required where the district judge deciding the § 2255 motion is thoroughly familiar with the case" and "it plainly appears from . . . the record of prior proceedings that the moving party is not entitled to relief." *Ouellette v. United States*, 862 F.2d 371, 377 (1st Cir. 1988); Rule 4(b) of the Rules Governing Section 2255 Proceedings.

### B.   Ineffective Assistance of Counsel

When claiming § 2255 relief due to ineffective assistance of counsel at trial, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The Court must apply a "strong presumption" that trial counsel's representation fell within the "'wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Ricther*, 131 S. Ct. 770, 787 (2011). This is a high standard, one in

which a habeas petitioner alleging prejudice must show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would have been "reasonably likely" different but for counsel's error is not dispositive of the "prejudice" inquiry. Rather, the Court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S. Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' ... [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S. Ct. at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Id.* In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s 'deferential standards.'" *Id.*

Courts are reluctant to characterize tactical or strategic decisions by trial counsel as ineffective assistance. *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). A "strong presumption" exists that counsel's actions were the function of trial tactics and not "sheer neglect." *Harrington*, 131 S. Ct. at 790. This rule, however, is not absolute where the purported strategic decision is based upon error or ignorance of the law by trial counsel. *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2nd Cir. 2009) (omissions based upon "oversight, carelessness, ineptitude or laziness" cannot be explained as "trial strategy"); *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007) (a strategic choice made without a professionally competent investigation of the Petitioner's options is "erected upon ... a rotten foundation" and is not entitled to deference).

-4-

The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008). Under *Strickland*, appellate counsel is ineffective only if his failure to raise an issue fell below an objective standard of reasonableness and, but for that failure, the Petitioner would have prevailed in his appeal. *See id.* "Effective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit, and [courts] must accord [ ] counsel the presumption that he decided which issues were most likely to afford relief on appeal." *Id.* (citations and internal quotation marks omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.*

## III.    Discussion

### A.    Ground One

In her first asserted ground for relief, Petitioner asserts trial counsel was constitutionally ineffective in failing to move to sever her case from Mr. Latham. Trial counsel actually did move for severance (Dkt. No. 148), but later withdrew the motion during a pretrial conference (Dkt. No. 341). Rule 8(b) of the Federal Rules of Criminal Procedure permits joinder of defendants where the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Petitioner and Mr. Latham were alleged to have conspired together in a common plan to murder Ms. Latham. There is no possibility that the Court would have granted the motion to sever, so Petitioner cannot satisfy the prejudice prong of Strickland. *Harrington*, 131 S. Ct. at 792 (2011) ("*Strickland* asks whether it is 'reasonably likely' the result would have been different."). Moreover, counsel making then withdrawing the motion shows that counsel did consider severance but made a strategic decision not to pursue it. Counsel's considered strategic

decisions are "virtually unchallengeable" under *Strickland*. 466 U.S. at 690 (1984). Accordingly, Petitioner's asserted first ground for relief is without merit.

**B.    Ground Two**

In her second asserted ground for relief, Petitioner asserts trial counsel was constitutionally ineffective in failing to move for a change of venue. Although no Defendant moved for a change of venue, the Government did move to change the venue for the selection of the jury panel. (Dkt. No. 271.) The Court considered the venue issue under the controlling legal standard, which provides that a change in venue for jury selection is warranted only where prejudice against the defendant is so great that a fair and impartial trial impossible and that rigorous *voir dire* proceedings are far preferable to a change of venue. *United States v. Higgs*, 353 F.3d 281, 307–08 (4th Cir. 2003); *United States v. Bakker*, 925 F.2d 728, 733 (4th Cir. 1991). The Court found that in this case "the extreme circumstances necessary to justify a presumption of a tainted jury panel do not exist" (Dkt. No. 284 at 2) and proceeded to select a jury on January 8, 2014. There has been no allegation—whether during jury selection, during trial, after trial, on appeal, or in post-appeal collateral proceedings—that any juror was biased or that jury deliberations were tainted. Nothing—not even the barest allegation—suggests any possibility that a Charleston area venire prejudiced Petitioner, that counsel was ineffective in making the strategic decision to select a jury from the Charleston area, or that the Court would have granted a motion to change venue if Petitioner had joined in the Government's venue motion. Petitioner's second ground for relief is without merit.

**C.    Ground Three**

In her third asserted ground for relief, Petitioner asserts trial counsel was constitutionally ineffective in failing to inform Petitioner of the opportunity to pursue a proffer agreement with the Government. In response, the Government supplies affidavits signed by Petitioner, dated

November 22, 2013 and February 25, 2014, in which Petitioner avers that she was aware of the proffer agreement opportunity, and affidavits from trial counsel attesting to the authenticity of Petitioner's affidavits.[1] (Dkt. No. 574-2 at 2 ¶ 6, 6 ¶ 6.) In response to that, Petitioner can only argue that the affidavits are forgeries. (Dkt. Nos. 565; 592 at 4–5.) Her principal argument in support of that rather dubious theory is that the November 22, 2013 affidavit mentions the Bentley Price Law Firm, but Mr. Price's affidavit states that he was retained in 2014. (*Id.* at 4.) While Mr. Price's affidavit does state, "In 2014, I was retained to represent Wendy A. Moore in case number 2:13-cr-00300," Mr. Price first appeared for Petitioner in this matter on April 18, 2013. (Dkt. No 30.) There is no incongruity in referring to Mr. Price as Petitioner's counsel in an affidavit dated over seven months after Mr. Price appeared on behalf of Petitioner. Further, the Court has compared Ms. Moore's signature on the original affidavits with her signature on a conflict waiver that she signed in the Court's presence (Dkt. No. 250) and finds that the signatures are the same. Further still, the Court has examined the original affidavits *in camera* and finds that they are authentic notarized documents. Petitioner's third ground for relief is without merit.

### D.  Ground Four

In her fourth asserted ground for relief, Petitioner asserts trial counsel was constitutionally ineffective in failing to introduce evidence proving Petitioner did not provide funds for the attempted assassination of Ms. Latham. At trial, evidence showed that Petitioner

---

[1] Petitioner objects that a third affidavit provided the Government is a forgery because Petitioner's signature is dated February 6, 2014 but the notarization is dated February 25, 2014. (Dkt. No. 574-2 at 4–5, 8–9 (two identical affidavits).) The Court sees no evidence of forgery but agrees that the affidavit is not in proper form. Because the affidavit is improper on its face and is disputed by the affiant, the Court declines to consider it. The issue is immaterial to Petitioner's request for relief, however, because Petitioner confirms her knowledge of the proffer agreement opportunity in other affidavits that are in proper form.

transferred money to Mr. Yenawine to hire him to kill Ms. Lathan. Petitioner argues that her attorney failed to introduce evidence, which she provided him, that would have shown the money was intended to purchase a car. (*E.g.*, Dkt. No. 568.) Petitioner also claims that this evidence would explain an increase in call volume between her and Mr. Yenawine, which the Government argued was evidence of criminal conspiracy. Petitioner also argues this evidence, even if insufficient to establish her innocence, would have shown that she was not the most culpable of the conspirators and therefore would have resulted in a lower sentence. (Dkt. No. 558 at 8.)

Trial counsel, however, may have had sound strategic reasons for declining to introduce Petitioner's evidence, a fact that precludes the possibility counsel performed deficiently. *See Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (holding *Strickland* requires courts "not simply to 'give [the] attorneys the benefit of the doubt,' but to affirmatively entertain the range of possible 'reasons . . . counsel' may have had for proceeding as they did" (citations omitted)). Admitting that Petitioner was in contact with Mr. Yenawine, and had sent him money just prior to his trip to Charleston to Ms. Latham, would have been inconsistent with defense counsel's well-considered strategy to separate Petitioner from the crime. Petitioner now argues that counsel was constitutionally ineffective in failing to *connect* her to the crime with an implausible explanation for the connection. Petitioner's car-purchase theory does not explain why Mr. Yenawine never purchased a car or why Petitioner used a false name when sending money to Mr. Yenawine.

Petitioner also argues in Ground Four that her counsel received money from co-Defendant Latham, retaining him to represent Petitioner, so that defense counsel had a conflict of interest while representing Petitioner. That issue was fully litigated pretrial. Petitioner testified that she was aware of Mr. Latham's role in payment of her legal fees, that she recognized the potential risk of conflict, and that she elected to waive any potential conflict that existed. (Dkt.

-8-

No. 252 at 2.) Petitioner thereafter, in the Court's presence, executed a written waiver of conflict. (Dkt. No. 250.)

Finally, Petitioner claims defense counsel was constitutionally ineffective in not presenting Igor Koob as a witness. (Dkt. No. 592 at 5.) Igor Koob is an armed robber incarcerated in Virginia. On November 9, 2006, he robbed a BB&T Bank in Fairfax County, Virginia. On November 14, 2006, he robbed a different BB&T Bank in Fairfax County. On November 21, 2006, while in custody on bank robbery charges, Mr. Koob attempted to escape and, in the attempt, he abducted a nurse employed at the jail and threatened to cut her throat. *See Koob v. Clarke*, 2:11-cv-195-DEM (E.D. Va. Oct. 17, 2011), ECF 11-4. Petitioner has submitted an affidavit from Mr. Koob averring that his "friend Samuel Yenawine" had written him a letter informing him that he and Christopher Latham had made a deal to murder Mr. Latham's wife, but that they had decided not to tell Ms. Moore "because Ms. Moore is very religious and it was contrary to her religious beliefs" to murder people. (Dkt. No. 567.) The Court finds trial counsel was not deficient in failing to call Mr. Koob, because his heinous criminal history, the fact that he was incarcerated in Virginia at all times relevant to the charges against Petitioner, and the ridiculous implausibility of his proposed testimony all provide obvious strategic reasons not to present him as a witness.

Accordingly, Petitioner's fourth ground for relief is without merit.

**E.    Ground Five**

In her fifth asserted ground for relief, Petitioner asserts trial counsel was constitutionally ineffective in failing to object to statements linking Petitioner to Mr. Yenawine's prior murder case. At trial, Petitioner's trial counsel asked Detective Lauren Mulkey if co-Defendant Wilkinson told her "there was another individual involved, another individual, a lawyer out of Kentucky?" (Dkt. No. 526 at 102.) Detective Mulkey responded in part that "there were some

attorneys in Kentucky, it was Sammy's [Yenawine's] attorney for his previous arson and murder trial, and Wendy's, his ex-wife's, the lawyer, they were partners, he said the partner told Sammy about this case and hooked him up with doing it." (*Id.* at 102–03.) On cross-examination, Mr. Latham's counsel asked Detective Mulkey,

> [Yenawine told Wilkinson] the way that he got this [murder-for-hire] job was he had – there were two attorneys, they're a pretty big shot firm in Jefferson County. One of them represents – I think him and Wendy actually had to separate cases as far as the murder and arson went. Somehow she was charged in trying to commit it, too.

(*Id.* at 105.)

Petitioner argues her counsel was ineffective in failing to object to her co-Defendant's counsel's elicitation of this testimony. But the questions were a strategic attempt by defense counsel—both Petitioner's counsel and Mr. Moore's counsel—to separate Ms. Moore and Mr. Latham from the murder-for-hire plot by suggesting that others persons—lawyers in Kentucky— were responsible for the plot. Ms. Moore's and Mr. Latham's counsel used Mr. Yenawine's prior murder and arson trial to identify those Kentucky lawyers. The failure to object to this testimony was not deficient performance; rather, it was a considered strategic decision. Further, it is utterly implausible that this testimony affected the outcome of the case, given the weight of the evidence against Petitioner. *Cf. Strickland*, 466 at 700 ("Given the overwhelming aggravating factors, there is no reasonable probability that the omitted evidence would have changed the conclusion that the aggravating circumstances outweighed the mitigating circumstances and, hence, the sentence imposed."). Any failure to object therefore cannot be prejudicial under *Strickland*. Petitioner's fifth ground for relief therefore is without merit.

**F.    Ground Six**

In her sixth asserted ground for relief, Petitioner asserts trial counsel was constitutionally ineffective in failing to object to prosecutorial remarks that Petitioner had a past criminal history.

-10-

In closing argument, the Government argued that the plot was Petitioner's idea, stating, "These were her people from Kentucky, Sammy Yenawine was her ex-husband. Her past is more consistent with this activity than Mr. Latham's. But somewhere along the line he joined this conspiracy." (Dkt. No. 534 at 269.) Petitioner argues this was a reference to her criminal history. The Court however finds that the Government was referring to Petitioner's past marriage to the contracted hit man, Mr. Yenawine, not to any unrelated past criminal acts.

Petitioner also argues the Government obtained the indictment using false witness statements, referring to testimony by witness Judy Werrell, Mr. Latham's former co-worker. Ms. Werrell testified that she made corrections to FBI agent's interview notes (known as "302"s). (Dkt. No. 529 at 212–221.) There is no evidence that the Government obtained the indictment by presenting the grand jury an incorrect 302 regarding an interview with Ms. Werrell.

Accordingly, Petitioner's sixth ground for relief is without merit.

### G.  Ground Seven

In her seventh asserted ground for relief, Petitioner asserts trial counsel was constitutionally ineffective in advising Petitioner to remain silent at sentencing. Petitioner must show a "reasonable probability" that, absent the alleged failure by counsel, her sentence might have been different. *Pronin v. Johnson*, 628 F. App'x 160, 163 (4th Cir. 2015). Although Petitioner claims that counsel advised her not to speak at sentencing and that her silence resulted in a harsher sentence, the Court clearly informed her that she could choose to remain silent and that her silence would not be held against her at sentencing. (*See* Dkt. No. 537 at 17.)

Petitioner also alleges counsel failed to investigate and present to the court mitigating personal characteristics, including her diagnosis of post-traumatic stress disorder resulting from sexual abuse. But the record belies that allegation. Counsel filed a motion for a downward variance with her diagnosis attached as an exhibit. (Dkt. No. 482). The Court granted the

-11-

motion and imposed a sentence considerably less severe than the sentencing guidelines recommended. (Dkt. No. 503.) The sentencing guideline range for Petitioner was 270 to 322 months (Dkt. No. 503), but Petitioner was sentenced only to 180 months (Dkt. No. 502). Petitioner alleges nothing suggesting any possibility that counsel could have done anything further to obtain an even lower sentence for Petitioner. Petitioner's seventh ground for relief therefore is without merit.

### H.    Ground Eight

In her eighth asserted ground for relief, Petitioner asserts the sentencing guideline calculated for Petitioner overstated her culpability and the extent of her involvement in the offense. Specifically, she claims she should have been sentenced as a "minimal participant." (Dkt. No. 592.) Under the sentencing guidelines, a minimal participant is entitled to a four-point offense level reduction. U.S.S.C. § 3B1.2. As explained above, however, the Court sentenced Petitioner outside the advisory guideline system, and imposed a sentence significantly shorter than Petitioner's guideline range would have been even with a four-point offense level reduction (a four-point reduction would have resulted in a guideline range of 195 to 228 months). Petitioner's eighth ground for relief therefore is without merit.

### I.    Ground Nine

In her ninth asserted ground for relief, Petitioner asserts appellate counsel was constitutionally ineffective in failing to challenge Petitioner's conviction under § 924(c) based on *Pinkerton* liability. Petitioner believes a case issued five days after her conviction held that § 924(c) convictions may not be based upon *Pinkerton* liability. (*See* Dkt. No. 558.) The validity of § 924(c) convictions on a *Pinkerton* theory of liability, however, is still clearly accepted. *See, e.g., United States v. Hare*, 820 F.3d 93, 105 (4th Cir. 2016). There was no error in the Court's jury instructions regarding *Pinkerton* liability and so appellate counsel was not

-12-

ineffective in failing to assign such error. Petitioner's ninth ground for relief, therefore, is without merit.

### J.    Ground Ten

In her tenth asserted ground for relief, Petitioner asserts appellate counsel was constitutionally ineffective in failing to challenge Petitioner's conviction under § 924(c) on the basis that Mr. Wilkinson, who was in actual possession of the firearm, was not charged under § 924(c). Mr. Wilkinson pleaded guilty to use of interstate commerce facilities with intent to commit a murder for hire in violation of 18 U.S.C. § 1958. Pursuant to a plea agreement, the Government dismissed charges under § 924(c). (Dkt. No. 441.) Petitioner declined the opportunity to cooperate with law enforcement. (*See* Dkt. No. 574-2.) That the Government dropped certain charges against Mr. Wilkinson in consideration of the substantial cooperation and assistance he provided law enforcement does not give rise to any cognizable ground for Petitioner to be relieved of the sentence imposed for her own actions. Petitioner's tenth ground for relief is without merit.

### IV.    Conclusion

For the foregoing reasons, the Court **DENIES** Petitioner's motion to vacate (Dkt. No. 558), **GRANTS** the Government's motion to dismiss (Dkt. No. 574), and **DENIES** Petitioner's motion for discovery, appointment of counsel, and a hearing (Dkt. No. 561).

### Certificate of Appealability

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

-14-

28 U.S.C. § 2253(c). A prisoner satisfies the standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **DENIED**.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

June 7, 2017
Charleston, South Carolina